

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRIS LANGER,<br>Plaintiff,<br>v.<br>KEVIN K. SHON, et al.,<br>Defendants. | Case No. CV 19-2060 FMO (MAAx)<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT** |

On March 20, 2019, plaintiff Chris Langer ("plaintiff") filed the instant action against Kevin K. Shon ("Shon") and Royal Sewing Machine Co., Inc. ("RSM") (collectively "defendants"), asserting claims under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, et seq. (See Dkt. 1, Complaint at ¶¶ 2-4, 24-36). Having reviewed and considered plaintiff's Motion for Partial Summary Judgment, (Dkt. 33, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## STATEMENT OF FACTS

Plaintiff, a paraplegic man who uses a wheelchair for mobility, drives a van with a ramp that deploys from the passenger side of the van to accommodate his wheelchair, which requires a parking space with a wide access aisle to provide him enough room to deploy the ramp. (See Dkt. 33-6, Declaration of Chris Langer ("Langer Decl.") at ¶¶ 2-3). On February 26, 2019, plaintiff

attempted to visit a store called the Royal Sewing Machine (the "Store"), located in Los Angeles, California. (See id. at ¶ 5). RSM is the current owner of the Store, (see Dkt. 33-14, Exh. 10, RSM Statement of Information), and Shon is the current owner of the real property ("Property") where the Store is located. (See Dkt. 33-13, Exh. 9, Property Grant Deed). Although the Store had a parking space for disabled customers, the space did not have an adjacent access aisle. (See Dkt. 33-6, Langer Decl. at ¶ 6). According to plaintiff, this barrier deterred him from patronizing the Store and caused him to leave the property. (See id. at ¶ 9).

On March 14, 2019, plaintiff's investigator visited the Store and found that the shared parking lot of the Store offered "approximately 22 parking spaces to its customers, one which had striping and wall-mounted signage indicating that it was reserved for use by persons with disabilities." (Dkt. 33-8, Declaration of Evens Louis ("Louis Decl.") at ¶¶ 3-4). He confirmed that the parking space reserved for disabled customers did not have an adjacent access aisle, (see id.), and further found that the transaction counter inside the Store measured 41 inches in height and lacked a lower portion accessible to persons in wheelchairs. (See id. at ¶¶ 5-6; Dkt. 33-9, Exh. 5, Photographs by Louis at 9-12).

On April 3, 2019, a certified access specialist conducted an inspection of defendants' Store and parking lot. (See Dkt. 33-12, Exh. 8, CASp Report). The specialist issued a Construction-Related Accessibility Report on April 22, 2019, which provided recommendations to defendants to bring the Store and parking lot into compliance with the ADA. (See id.). Defendants subsequently altered the parking lot and sales counter in the Store. (See Dkt. 33-10, Declaration of Randall Marquis ("Marquis Decl.") at ¶¶ 5 & 7; Dkt. 33-11, Exh. 7, Photographs by Marquis at 8).

On December 20, 2019, another investigator hired by plaintiff visited the Store to conduct a follow-up investigation. (See Dkt. 33-10, Marquis Decl. at ¶ 3). The parking lot had approximately 17 spaces for customers, one of which was marked and designated for use by customers with disabilities. (See id. at ¶ 4). There was an access aisle adjacent to the designated accessible parking space. (See id. at ¶ 5; Dkt. 33-11, Exh. 7, Photographs by Marquis

at 8). Additionally, the counter height inside the store was 33 inches. (See Dkt. 33-10, Marquis Decl. at ¶ 7).

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex, 477 U.S. at 323, 106 S.Ct. at 2553. If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000) ("Nissan Fire").

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (holding that a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").[1] A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. See Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991), cert. denied, 505 U.S. 1206 (1992). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

## DISCUSSION[2]

"To prevail on a discrimination claim under Title III [of the ADA], a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Arizona ex rel. Goddard v. Harkins Amusement Enter., Inc., 603 F.3d 666, 670 (9th Cir. 2010). Here, the evidence is undisputed that plaintiff meets the first and second elements. (See Dkt. 33-6, Langer Decl. at ¶ 2); (Dkt. 33-13, Exh. 9, Property Grant Deed); (Dkt. 33-14, Exh. 10, RSM Statement of Information); see also 42 U.S.C. § 12181(7)(E) (listing "a bakery, grocery store, clothing store, hardware store, shopping

---

[2] Where, as here, the nonmoving party fails to file an opposition, (see, generally, Dkt.), the court "may not grant [the] motion for summary judgment simply because the nonmoving party does not file opposing material, even if the failure to oppose violates a local rule." Brydges v. Lewis, 18 F.3d 651, 652 (9th Cir. 1994) (per curiam). Instead, the court examines whether the moving party has met his or her "affirmative duty under Rule 56 to demonstrate [his] entitlement to judgment as a matter of law." Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003).

center, or other sales or rental establishment" as a "public accommodation"); see, e.g., Arroyo v. Aldabashi, 2018 WL 4961637, *3 (N.D. Cal. 2018) ("There is no question that [plaintiff] (who is paraplegic) is disabled or that the Store is a public accommodation.").

With respect to the third element, the evidence must demonstrate that the subject parking space fails to comply with the ADA. The ADA Accessibility Guidelines ("ADAAG") "lay out the technical structural requirements of places of public accommodation." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 945 (9th Cir. 2011) (en banc) (internal quotation marks omitted). "The ADAAG's requirements are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established by the ADA is often a matter of inches." Id. at 945-46.

Under both the 1991 and 2010 ADAAG standards, any business that provides parking must provide at least one accessible parking space conforming to the Guidelines' specifications. See 1991 ADA Standards for Accessible Design ("1991 Standards") § 4.1.2(5)(a); 2010 ADA Standards for Accessible Design ("2010 Standards") § 208.2. "Under the 1991 ADAAG standards, one in every eight accessible spaces, but not less than one, shall be designated 'van accessible.'"[3] Johnson v. Lababedy, 2016 WL 4087061, *4 (E.D. Cal. 2016). The 2010 Standards, on the other hand, require that "[f]or every six or fraction of six parking spaces required by 208.2 to comply with 502, at least one shall be a van parking space complying with 502." 2010 Standards § 208.2.4. An accessible parking space must be 96 inches in width, while a "van accessible" parking space must be 132 inches wide (or 96 inches wide if adjacent to a 96-inch

---

[3] Plaintiff addresses both the 1991 and the 2010 ADAAG standards in his Motion. (See Dkt. 33-1, Memo. at 8-11). However, plaintiff does not express an opinion as to which of these standards governs the Store. (See generally, id.). Presumably, this is because plaintiff does not know whether the parking lot has been altered since 2012. Cf. Johnson v. Wayside Property, Inc., 41 F.Supp.3d 973, 976 n. 3 (E.D. Cal. 2014) ("All architectural and structural elements in a facility are required to comply with the 1991 Standards to the extent that compliance is readily achievable; by contrast, the 2010 standards apply only to elements that have been altered in existing facilities, or that fail to comply with the 1991 Standards, on or after March 15, 2012."). Nevertheless, the court need not determine whether the 1991 or the 2010 standards govern the Store and its parking lot to decide the Motion.

access aisle). See id. at § 502.2. A van accessible parking space must have an access aisle of 60 inches. See id. at §§ 502.2 & 502.3.1.

Here, the undisputed facts demonstrate that the Store's parking lot failed to comply with the ADA when plaintiff attempted to visit the store in February, 2019. (See Dkt. 33-6, Langer Decl. at ¶ 6) (the Store's accessible parking space lacked an access aisle). Plaintiff's investigator identified other ADA compliance deficiencies when he visited the store the following month. (See Dkt. 33-8, Louis Decl. at ¶¶ 3, 5-6) (the Store's transaction counter was 41 inches high, and did not have a portion of the counter lowered for use by persons in wheelchairs).

After filing suit against defendants for violations of the ADA and the Unruh Civil Rights Act, (see Dkt 1, Complaint), plaintiffs hired another investigator to visit the Store to conduct a follow-up investigation. (See Dkt. 33-10, Marquis Decl. at ¶ 3). This investigation revealed that defendants remedied all ADA compliance deficiencies in the Store and its parking lot. For example, there was an access aisle adjacent to the designated accessible parking space, (see id. at ¶ 5); (Dkt. 33-11, Exh. 7, Photographs by Marquis at 8), and the counter height inside the store was 33 inches. (See Dkt. 33-10, Marquis Decl. at ¶ 7); (1991 Standards § 7.2(1)) (sales and service counters must have a portion of the counter that does not exceed 36 inches in height); 2010 Standards § 904.4.1 (same).

Plaintiff acknowledges that defendants remedied all alleged ADA compliance deficiencies in the Store and parking lot, (see Dkt. 33-1, Memo. at 3-4), but argues that defendants violated the ADA by "failing" to "maintain the accessibility of the parking." (Id. at 13). Plaintiff claims that defendants "have a history of failing to maintain their accessible parking spaces and allowing them to fade and become unusable." (Id.). Plaintiff thus "seeks an injunction requiring Defendant to maintain the accessibility of the parking." (Id. at 14).

"Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA[,] . . . a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011); see Kohler v. In–N–Out Burgers, 2013 WL 5315443, * 8 (C.D. Cal. 2013) (holding that plaintiff's injunctive relief claim under the ADA was moot with respect to remedied ADA violations);

Grove v. De La Cruz, 407 F.Supp.2d 1126, 1131 (C.D. Cal. 2005) (dismissing plaintiff's ADA claims predicated on alleged violations that had been corrected as moot); Wilson v. Pier 1 Imports (US), Inc., 439 F.Supp.2d 1054, 1069-71 (E.D. Cal. 2006) (finding moot plaintiff's ADA claims, including claim regarding lack of signs for each accessible parking space, where defendants remedied these issues).

"Voluntary cessation of an illegal course of conduct does not render moot a challenge to that course of conduct unless (1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Barnes v. Healy, 980 F.2d 572, 580 (9th Cir. 1992). In the context of ADA accessibility claims, courts have held that "where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future since structural modification undo the offending conduct." Moore v. Saniefar, 2017 WL 1179407, *6 (E.D. Cal. 2017). The burden of demonstrating that the challenged conduct cannot be expected to recur ordinarily rests with the defendant. See id. However, where the factual context "renders [plaintiff's] claim implausible[,]" plaintiff "must come forward with more persuasive evidence to support [his] claim than would otherwise be necessary." See Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

Here, plaintiff argues that defendants' conduct will likely be repeated because the "parking lot striping will fade and will need to be repainted every few years, [and] it [will be] very easy for the defendants to return to their previous ways and not provide a compliant parking space." (Dkt. 33-1, Memo. at 13). However, modifications such as "building a new parking space, painting lines and an access aisle, and putting up signs . . . are more akin to 'structural modifications' unlikely to be easily reversed." Langer v. Nenow, 2020 WL 708144, *6 (S.D. Cal. 2020). The court is persuaded that defendants' modifications to the Store and parking lot – painting lines to add an access aisle to the subject parking space and lowering the Store's transaction counter – are akin to structural modifications, and a reversion to non-compliance "would actually cost Defendant[s] more than maintaining compliance." Kohler v. Bed Bath & Beyond of Cal., 2012 WL 3018320,

*4 (C.D. Cal. 2012) (rejecting plaintiff's argument that defendant could return to his offending conduct as "illogical" where defendant would receive no benefit from reverting to non-compliance).

Plaintiff also argues that photographs "depicting the [] condition of the parking lot prior to this lawsuit demonstrate that the Defendants have a history of failing to maintain their accessible parking spaces and allowing them to fade[.]" (Dkt. 33-1, Memo. at 13). These photographs, however, only demonstrate that defendants' parking lot did not comply with the ADA prior to plaintiff's lawsuit, rather than any history of noncompliance by defendants. (See Dkt 33-9, Exh. 5, Photographs by Louis); cf. Lozano v. C.A. Martinez Family Ltd. P'ship, 129 F.Supp.3d 967, 971 (S.D. Cal. 2015) (rejecting defendants' argument that plaintiff's ADA claims were moot where defendants constructed compliant parking space after settling a prior ADA lawsuit and were now again in violation). Where, as here, "there is no reasonable . . . expectation that the alleged violation will recur, and where intervening events have completely and irrevocably eradicated the effects of the violation, the case is moot." Am. Cargo Transp., Inc. v. United States, 625 F.3d 1176, 1179 (9th Cir. 2010) (internal quotation marks omitted).

In short, although plaintiff "plan[s] to visit [the Store] again to shop" because "it has been represented to [him] that an accessible parking space and access aisle ha[ve] been repainted," (see Dkt. 33-6, Langer Decl. at ¶ 13), he failed to demonstrate that a "real and immediate threat" that the injury will be repeated exists. See Chapman, 631 F.3d at 946 (internal quotation marks omitted). The voluntary cessation exception to the mootness doctrine is therefore inapplicable, see Barnes, 980 F.2d at 580, and plaintiff's motion for summary judgment is denied. See, e.g., Johnson v. Cala Stevens Creek/Monroe, LLC, 401 F.Supp.3d 904, 910 (N.D. Cal. 2019) (denying plaintiff's motion for summary judgment because plaintiff's ADA claim was moot). Thus, the court has no subject matter jurisdiction to consider plaintiff's ADA claim. See, e.g., In re Burrell, 415 F.3d 994, 998 (9th Cir. 2005) ("If the controversy is moot, . . . the trial . . . court[] lack[s] subject matter jurisdiction, and the concomitant power to declare the law by deciding the claims on the merits.") (citation and internal quotation marks omitted).

Finally, plaintiff seeks statutory damages pursuant to the Unruh Civil Rights Act. (See Dkt. 33-1, Memo. at 20-23). However, the court will dismiss plaintiff's Unruh Act claim for two reasons.

First, under 28 U.S.C. § 1367(c), a court can decline to assert supplemental jurisdiction over a pendant claim if one of the following four categories applies: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. Thus, the court declines to retain supplemental jurisdiction over plaintiff's second cause of action because it has "dismissed all claims over which it has original jurisdiction[.]" See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Second, even if the court still had original jurisdiction over plaintiff's ADA claim, the court would dismiss plaintiff's Unruh Act claim because "exceptional circumstances" and "compelling reasons" support this decision. See 28 U.S.C. § 1367(c)(4). The court reaches this conclusion for largely the same reasons articulated by the court in Whitaker v. Chipotle Mexican Grill, Inc.. See 2020 WL 1972282, *3-*6 (C.D. Cal. 2020). Specifically, statistics gathered by the court demonstrate that, after California enacted restrictions on construction-related accessibility claims under the Unruh Act,[4] "[t]he number of construction-related accessibility claims filed in the Central

[4] "In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." Velez v. Il Fornanio (America) Corp., 2018 WL 6446169, *6 (S.D. Cal. 2018). These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," defined as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related disability standard[.]" Cal. Civ. Code § 55.52(a)(1). "Under the Unruh Act[,] a plaintiff alleging disability discrimination must include in his complaint: (1) an explanation of the specific access barrier or barriers encountered; (2) the way in which the barrier denied the individual full and equal access, or in which it deterred the individual on each particular occasion[; and] (3) the date/s when the claimant encountered the specific barriers. The section also contains additional requirements for high-frequency litigants." Velez, 2018 WL 6446169, at *6 n. 4 (citing Cal. Civ. Code § 425.50).

District has skyrocketed both numerically and as a percentage of total civil filings[.]" Id. at *4. "By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens that California's businesses may face from claims for statutory damages and attorneys' fees under the Unruh Act brought by serial litigants." Id. at *5. "By filing this action in federal court, Plaintiff has evaded these limits and claimed state law damages in a manner inconsistent with the state law's requirements." Id. "This situation, and the burden that the ever-increasing number of such cases poses to the federal courts, present 'exceptional circumstances' and 'compelling reasons' that justify the Court's decision to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim in this action under 28 U.S.C. § 1367(c)(4)." Id.

## CONCLUSION

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment (Document No. 33) is **denied.** Plaintiff's First Cause of Action for Violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq., is **dismissed with prejudice**. Plaintiff's Second Cause of Action for Violation of the Unruh Civil Rights Act, Cal. Civ. §§ 51, et seq., is **dismissed without prejudice**.

2. Judgment shall be entered accordingly.

Dated this 27th day of May, 2020.

/s/
Fernando M. Olguin
United States District Judge